UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| ESTATE OF WILLIAM ABBE, deceased, and KARA BRANDON, as personal representative for the ESTATE OF WILLIAM ABBE <br><br> PLAINTIFFS, <br><br> vs. <br><br> CITY OF VANCOUVER, JAY ALIE, INDIVIDUALLY AND AS AN EMPLOYEE OF VANCOUVER POLICE DEPARTMENT, SEAN SUAREZ, INDIVIDUALLY AND AS AN EMPLOYEE OF VANCOUVER POLICE DEPARTMENT, SAMMY ABDALA, INDIVIDUALLY AND AS AN EMPLOYEE OF VANCOUVER POLICE DEPARTMENT, <br><br> DEFENDANTS. | No. 3:21-cv-5790 <br><br><br><br> **COMPLAINT FOR DAMAGES AND DEMAND FOR JURY** <br><br><br> **[JURY DEMAND]** |

## I.   INTRODUCTION

1.1    This is a civil rights action arising from excessive use of force by a group of Vancouver Police Department (VPD) officers on 4/28/2020.  Defendant

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021

1

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

1   officers shot William Abbe in the back multiple times, and shot him while he was

2   laying face down on the ground, and thereby injured and killed him.  VPD Chief

3   James McElvain was personally involved in the internal affairs review of the killing,

4   and even assisted in the drafting of the internal affairs report that was used to ratify

5   the actions of Defendant officers.

6       1.2    Defendants, while acting in their capacities as law enforcement officers

7   in City of Vancouver, State of Washington, deprived plaintiff of his rights, property,

8   liberty, and life, without due process of law, and thereby deprived plaintiff of his

9   rights guaranteed by the Fourth, Eighth, and Fourteenth Amendments to the

10   Constitution of the United States, 42 U.S.C. §§ 1983, 1985, and 1988.

11       1.3    Additional Washington State law claims of Negligence, Assault and

12   Battery, and Wrongful Death are also brought forward in this action.

13   ## II.    <u>PARTIES</u>

14       2.1    Defendant CITY OF VANCOUVER, a municipal corporation, is a

15   lawfully constituted municipal corporation and body politic of the State of

16   Washington, and at all times material to this action operated VPD.

17       2.2    Defendant JAY ALIE, is, and at all times relevant was, a resident of

18   City of Vancouver, Washington, and employee of VPD, acting as a lawfully

19   commissioned law enforcement officer.  Sgt. Alie is being sued both in his

20   individual capacity, personal capacity, and official capacity.

ANGUS LEE
LAW FIRM, PLLC

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021

2

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

2.3     Defendant SEAN SUAREZ, is, and at all times relevant was, a resident of City of Vancouver, Washington, and employee of VPD, acting as a lawfully commissioned law enforcement officer.  Ofc. Suarez is being sued both in his individual capacity, personal capacity, and official capacity.

2.4     Defendant SAMMY ABDALA, is, and at all times relevant was, a resident of City of Vancouver, Washington, and employee of the VPD, acting as a lawfully commissioned law enforcement officer. Ofc. Abdala is being sued both in his individual capacity, personal capacity, and official capacity.

2.5     WILLIAM ABBE was 50 years old when he was killed by defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala.  Mr. Abbe was a resident of City of Vancouver, Washington at the time he was killed by defendants.

2.6     Plaintiff is the ESTATE OF WILLIAM ABBE, Kara Brandon, the daughter of the late William Abbe, as the Personal Representative of the ESTATE OF WILLIAM ABBE.  Kara Brandon is a citizen of the United States residing in City of Vancouver, Washington.

### III.     JURISDICTION AND VENUE

3.1     This action is brought pursuant to 42 U.S.C. §§ 1983, 1985(3) and § 1988, and the Fourth, Fifth, Eighth and Fourteenth Amendments.

3.2     Jurisdiction is founded on 28 U.S.C. §§ 1331, 1332, and 1343 and the aforementioned statutory and constitutional provisions.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790                                    3
Tuesday, October 26, 2021

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

3.3     This action also includes state law claims arising from the same incident and involving the same parties.

3.4     This court can and should exercise supplemental jurisdiction over state claims and other parties under 28 U.S.C. § 1367(a), as the other claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

3.5     All parties are resident in or doing business in City of Vancouver, Washington, and the Western District of the United States Federal Court for Washington, and are citizens of the United States of America.

3.6     Venue is proper in this District pursuant to 28 U.S.C. § 1391 as a substantial part of the events and omissions giving rise to the claims asserted herein occurred in City of Vancouver, Washington, which is in this court's district and division.

3.7     The complaint is timely filed within the applicable statute of limitations. The appropriate statute of limitations is Washington's three-year statute for personal injury claims. RCW 4.16.080. The United States Supreme Court and the Ninth Circuit have held that 42 U.S.C. § 1983, which does not contain a statute of limitations, adopts the relevant statute of limitations for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261 (1985); *Stanley v. Trustees of California State University*, 433 F.3d 1129 (9th Cir. 2006).

COMPLAINT AND DEMAND
NO.  3:21-cv-5790                                    4
Tuesday, October 26, 2021

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

# IV.   **FACTUAL ALLEGATIONS**

*Leslie Lafine*

4.1    Leslie Lafine helped care for homeless in Vancouver Washington.

4.2    Mrs. Lafine knew Mr. Abbe for about two years, and knew that he suffered from mental illness.

4.3    Specifically, Mrs. Lafine knew that Mr. Abbe suffered from schizophrenia.

4.4    Prior to the 4/28/20 incident, Mrs. Lafine had previously observed Abbe shout that the police were pointing guns at him when nobody was there.

4.5    Mrs. Lafine had once given Mr. Abbe a ride before; and he was very polite.

4.6    One time in the past, Mr. Abbe came to her defense when she was being harassed while walking along Mill Plain road.

*William Abbe*

4.7    William Abbe was at all times relevant, a resident of City of Vancouver, Washington.

4.8    On 4/28/20, Mr. Abbe was 50 years old.

4.9    The temperature on the morning of 4/28/20 in Vancouver, Washington was approximately 70 degrees.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021

5

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

4.10   The weather on the morning of 4/28/20 in Vancouver, Washington was partly cloudy, but it was not raining that day.

4.11   On 4/28/20, Mr. Abbe was experiencing a mental health crisis.

4.12   Mr. Abbe was reported to have been in an altercation with another man on the street.

4.13   Prior to the arrival of police at the location of the incident, Mr. Abbe was informed that the police had been called.

4.14   After Mr. Abbe was informed that the police had been called, he sat in a chair and waited for the police to arrive.

4.15   VPD officers arrived to the incident in marked and unmarked patrol cars.

4.16   At least 7 VPD patrol cars arrived at the scene while the incident was ongoing and Mr. Abbe was still alive.

4.17   Sgt. Alie, Ofc. Abdala, Ofc. Suarez, and other officers contacted Mr. Abbe at the scene.

4.18   Sgt. Alie, Ofc. Abdala, and Ofc. Suarez were acting as agents of VPD and the City of Vancouver during the contact and at all times relevant to this matter.

4.19   Contact between Sgt. Alie, Ofc. Abdala, Ofc. Suarez, other VPD officers and Mr. Abbe occurred in a parking lot near the intersection of NE Stapleton Rd and NE 4th Plain BLVD in Vancouver, Washington.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021

6

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

1    4.20   The road and pavement in the parking lot were dry at the time of the

2  contact.

3    4.21   Mr. Abbe's conduct during his contact with the VPD officers made it

4  obvious to any reasonable observer that Mr. Abbe was experiencing a mental health

5  crisis at the time of the contact.

6    4.22   During that contact, Mr. Abbe did not cause physical injury to any VPD

7  officer.

8    4.23   During that contact, Sgt. Alie, Ofc. Abdala, and Ofc. Suarez fired a

9  combined total of five (5) rounds from their handguns at Mr. Abbe and killed him.

10    4.24   There were several other VPD officers present and interacting with Mr.

11  Abbe, but none of these other officers fired their weapons at Mr. Abbe.

12    4.25   Prior to Sgt. Alie, Ofc. Abdala, and Ofc. Suarez shooting at Mr. Abbe,

13  Mr. Abbe had not touched any of the VPD officers.

14    4.26   Prior to Sgt. Alie, Ofc. Abdala, and Ofc. Suarez shooting at Mr. Abbe,

15  Ofc. Suarez never told Mr. Abbe he was under arrest.

16    4.27   Prior to Sgt. Alie, Ofc. Abdala, and Ofc. Suarez shooting at Mr. Abbe,

17  Sgt. Alie never told Mr. Abbe he was under arrest.

18    4.28   Prior to Sgt. Alie, Ofc. Abdala, and Ofc. Suarez shooting at Mr. Abbe,

19  Ofc. Abdala never told Mr. Abbe he was under arrest.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790                                    7
Tuesday, October 26, 2021

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

1    4.29   Prior to Sgt. Alie, Ofc. Abdala, and Ofc. Suarez shooting at Mr. Abbe,

2    none of the other VPD officers present at the scene of the incident told Mr. Abbe he

3    was under arrest.

4    *Video*

5    4.30   Kevin Granillo is a civilian who was sitting in his car with a view of

6    the interactions between the VPD officers and Mr. Abbe on 4/28/20.

7    4.31   Mr. Granillo video recorded part of the interactions between the VPD

8    officers and Mr. Abbe.

9    4.32   Mr. Granillo posted the video of the incident to Facebook Live.

10   4.33   The video recorded by Mr. Granillo was recovered by investigating

11   officers who were later assigned to investigate the killing of Mr. Abbe.

12   4.34   The file name for Mr. Granillo's video of the killing of Mr. Abbe is

13   "20200428_111523.mp4."

14   4.35   Mr. Granillo watched the officers shoot Mr. Abbe, and did not believe

15   that Mr. Abbe was trying to hurt any of the police officers.

16   4.36   Mr. Granillo believed that the officers could have resolved the matter

17   without shooting Mr. Abbe.

18   4.37   Mr. Granillo believed that it was apparent that Mr. Abbe was have a

19   mental health crisis at the time the police shot and killed him.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021

8

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

4.38   The video taken by Mr. Granillo, "20200428_111523.mp4," is 4 minutes and 18 seconds long.

4.39   When the video begins, Mr. Abbe is seen standing in a parking lot approximately 20 feet from three VPD officers, who all have handguns drawn.

4.40   At the 14-second mark of the video, there are five (5) VPD officers in the parking lot and Abbe is approximately 25 feet away from them.  At that point, two of the officers have handguns pointed at Abbe, and another officer has an AR15 style rifle pointed at Mr. Abbe.

4.41   At the 32-second mark, Sgt. Alie walks into the video frame.

4.42   While the five other VPD officers were grouped together, Sgt. Alie intentionally isolated himself from the group of officers and then directly engaged Mr. Abbe verbally.

4.43   Alie stood approximately 20 feet away from the other officers.

4.44   At approximately the 2-minute mark, Sgt. Alie is seen observing Mr. Abbe while Sgt. Alie is standing behind a C-Tran van.

4.45   At approximately the 2-minute and 30-second mark, Mr. Granillo, while observing the contact, says "this guy is obviously not in his right mind."

4.46   At approximately the 2-minute and 45-second mark, Mr. Abbe and Sgt. Alie are seen exchanging words; and Mr. Abbe begins to walk towards Sgt. Alie.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021

9

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

1    4.47   At no point in the video does Mr. Abbe run, jump, or lurch at or toward

2    Sgt. Alie.

3    4.48   At approximately the 2-minute and 54-second mark, Sgt. Alie draws

4    his handgun from its holster.

5    4.49   At approximately the 2 minute and 55 second mark, Alie levels his

6    handgun, holding it in both hands, and points it at Mr. Abbe's chest.

7    4.50   At that same time, the other group of officers also had their firearms

8    leveled and pointed at Abbe.

9    4.51   When Sgt. Alie leveled his handgun at Mr. Abbe, Mr. Abbe stopped

10   walking towards Sgt. Alie and stood still.

11   4.52   Even though Mr. Abbe had stopped walking towards Sgt. Alie, and was

12   standing still, Sgt. Alie fired a single round directly into Mr. Abbe's upper chest.

13   4.53   The first round fired by Sgt. Alie struck Mr. Abbe in the upper chest.

14   4.54   Upon being shot in the chest by Sgt. Alie, Mr. Abbe immediately turned

15   around and away from Sgt. Alie.

16   4.55   After Mr. Abbe turned around and away from Sgt. Alie, Sgt. Alie then

17   fired a second round directly into Mr. Abbe's back.

18   4.56   After being shot in the back by Sgt. Alie, Mr. Abbe fell face down and

19   away from Sgt. Alie.

COMPLAINT AND DEMAND
NO. 3:21-cv-5790                                    10
Tuesday, October 26, 2021

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

1      4.57   After Abbe had been shot in the chest and the back, and was falling to

2  the ground, Ofc. Suarez fired a round at Mr. Abbe.

3      4.58   After Mr. Abbe was face down on the ground, Ofc. Suarez fired another

4  round at Mr. Abbe.

5      4.59   Finally, after Sgt. Alie and Ofc. Suarez had both fired twice at Mr.

6  Abbe, Ofc. Abdala fired a round at Mr. Abbe as Mr. Abbe was face down on the

7  ground.

8      4.60   The Defendants Ofc. Alia, Ofc. Abdala, and Ofc. Suarez, fired a total

9  of five rounds at Mr. Abbe.

10      4.61   Mr. Abbe was shot once in the chest.

11      4.62   Mr. Abbe was shot twice in the back.

12      4.63   Mr. Abbe was shot once in the low abdomen.

13      4.64   Mr. Abbe was shot in the leg.

14      4.65   After being shot, Mr. Abbe continued to lay face down, bleeding and

15  in pain, but did not immediately die.

16      4.66   Mr. Abbe suffered great pain and agony from the time he was shot to

17  the time he later died.

18      4.67   Before Mr. Abbe died, Sgt. Alie and others advanced on Mr. Abbe and

19  handcuffed him behind his back.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021

11

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

4.68   One of the officers at the scene kneeled on top of Mr. Abbe while the other officers handcuffed him.

4.69   The use of deadly force on Mr. Abbe by Defendants Ofc. Alia, Ofc. Abdala, and Ofc. Suarez was not justified in these circumstances.

**Stephanie Nelson**

4.70   Stephanie Nelson was in the area of the incident on 4/28/20.

4.71   However, Mrs. Nelson was not able to hear anything that Mr. Abbe was saying to the police before the police shot him.

4.72   Mrs. Nelson observed Mr. Abbe walk towards a single officer and then heard a single gunshot.

4.73   After the first gunshot, Mrs. Nelson observed Mr. Abbe turn away from the officer who shot him.

4.74   After Mr. Abbe turned away from the officer who first shot Mr. Abbe, Mrs. Nelson heard more gunshots.

**Officer Jay Alie**

4.75   At all times relevant to this matter, VPD's officer Jay Alie was a police officer, in a police uniform, and acting under the color of law.

4.76   At all times relevant Sgt. Alie was wearing body armor.

4.77   Sgt. Alie was the "commander" on scene for the incident with Mr. Abbe.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790                                    12
Tuesday, October 26, 2021

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

1    4.78   At all times relevant, Sgt. Alie was armed with a taser.

2    4.79   On 4/28/20, Sgt. Alie was a VPD patrol sergeant.

3    4.80   Sgt. Alie's radio call sign was "2X46."

4    4.81   On 4/28/20, Sgt. Alie was carrying an HK VP9 handgun loaded with

5    15 rounds in the magazine and one in the chamber.

6    4.82   At all times relevant, Sgt. Alie's handgun was loaded with hollow point

7    type bullets.

8    4.83   Hollow point type bullets expand upon impact with an object after

9    having been fired.

10    4.84   Hollow point bullets generally produce greater trauma to the human

11    body than traditional non-hollow point ammunition of the same caliber.

12    4.85   When fired through a human body, hollow point bullets generally

13    produce larger exit wounds than entrance wounds.

14    4.86   Sgt. Alie had an FN SLP 12 gauge shotgun with him in the front cabin

15    of his patrol car when he arrived on scene (serial number: 11BZV11826).

16    4.87   Sgt. Alie's shotgun model was capable of firing less lethal rounds.

17    4.88   Sgt. Alie had access to less lethal rounds for his shotgun when he was

18    at the scene on 4/28/20.

19    4.89   The shotgun was equipped with a Leopold red dot reflex style optic for

20    greater accuracy.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790                                        13
Tuesday, October 26, 2021

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

1    4.90    When Sgt. Alie exited his patrol car, he left the shotgun in the car.

2    4.91    Sgt. Alie also had a riot type shield in his patrol car.

3    4.92    When Sgt. Alie exited his patrol car, he left the riot type shield in the

4    car.

5    4.93    Sgt. Alie fired two rounds at Mr. Abbe.

6    4.94    On 5/1/2020, Sgt. Alie was interviewed by Det. Fred Neiman.

7    4.95    During the 5/1/20 interview, Sgt. Alie was assisted by his attorney

8    Michael Staropoli.

9    4.96    Prior to Sgt. Alie choosing to engage Mr. Abbe and eventually shooting

10   him, he had been notified over the radio that an officer with a 40mm less lethal round

11   was in route, and that VPD police dog ("K9") handler Epperson was in route with a

12   K9.

13   4.97    Prior to Sgt. Alie choosing to engage Mr. Abbe and eventually shooting

14   him, he requested that other officers shut down Fourth Plain Blvd and he confirmed

15   that a K9 officer and a 40 mm less lethal were in route.

16   4.98    During the 5/1/20 interview, Sgt. Alie admitted that, after he had

17   spoken to Mr. Abbe, he anticipated shooting Mr. Abbe and therefore removed one

18   of his gloves so that he could better grip his handgun when he shot at Mr. Abbe.

19   4.99    During Sgt. Alie's interview on 5/1/20, Sgt. Alie admitted that Mr.

20   Abbe was only walking towards Sgt. Alie before Sgt. Alie shot at him.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790                                14
Tuesday, October 26, 2021

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

4.100 During the 5/1/20 interview, Sgt. Alie stated that he deliberately drew his handgun slowly so that Mr. Abbe could see what was happening.

4.101 During the 5/1/20 interview, Sgt. Alie stated "I very deliberately pull my gun out slowly so [Abbe] can see what's happening."

4.102 During the 5/1/20 interview, Sgt. Alie admitted that he fired one round at Mr. Abbe.

4.103 During the 5/1/20 interview, Sgt. Alie admitted that the first shot had an effect on Mr. Abbe.

4.104 During the 5/1/20 interview, Sgt. Alie stated that after he had shot Mr. Abbe, he saw Mr. Abbe react to the first shot fired by Sgt. Alie.

4.105 During the 5/1/20 interview, Sgt. Alie stated, "I fired at him aiming you know high chest as we train."

4.106 When Sgt. Alie fired the first shot at Mr. Abbe, Sgt. Alie was aiming for Mr. Abbe's high chest.

4.107 During the 5/1/20 interview, Sgt. Alie admitted to firing a second time at Abbe.

4.108 During the 5/1/20 interview, Sgt. Alie stated that he observed that Mr. Abbe had sustained gunshot wounds.

4.109 During the 5/1/20 interview, Sgt. Alie admitted that he did not personally provide medical treatment to Mr. Abbe.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021

15

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

1    4.110 During the 5/1/20 interview, Sgt. Alie was asked, "so it's clear on the

2  record, uh, do you recall any past contacts with this individual?" Alie responded: "I

3  had no idea who he was when I was on scene. His name is familiar to me but I'm

4  not aware of particular interaction with him but at that time I had no idea."

5    4.111 During the 5/1/20 interview, Sgt. Alie was asked "You said that he

6  started walking towards you. Are you able to describe his speed or do you recall

7  what that looked like?" Sgt. Alie responded: "He- he didn't lunge. He didn't t- take

8  off running."

9    4.112 Sgt. Alie never considered requesting a VPD Command Officer

10  respond to the scene prior to shooting Mr. Abbe.

11    4.113 During the interview of Sgt. Alie, for the VPD internal investigation

12  (IAC: 2020-0047), Sgt. Alie admitted that, after being given notice of the internal

13  investigation, he had nevertheless spoken to the other subjects of this investigation

14  about the incident.

15    4.114 During the interview of Sgt. Alie, for the VPD internal investigation

16  (IAC: 2020-0047), Sgt. Alie was asked whether he had given Mr. Abbe any lawful

17  orders. Sgt. Alie responded that he did not personally give Mr. Abbe any lawful

18  orders during the incident.

19    4.115 During the interview of Sgt. Alie, for the VPD internal investigation

20  (IAC: 2020-0047), Sgt. Alie was asked if, prior to the incident on 4/28/20, he was

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021

16

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

1    aware of whether Mr. Abbe had any violent criminal history. Sgt. Alie answered,

2    "no."

3        4.116 During the interview of Sgt. Alie, for the VPD internal investigation

4    (IAC: 2020-0047), Sgt. Alie admitted that he never told Mr. Abbe that he was under

5    arrest.

6        4.117 During the interview of Sgt. Alie, for the VPD internal investigation

7    (IAC: 2020-0047), Sgt. Alie admitted that no officer on scene told Mr. Abbe that he

8    was under arrest prior to the officers shooting Mr. Abbe.

9        4.118 In fact, no officer on scene told Mr. Abbe he was under arrest prior to

10   the officers shooting Mr. Abbe.

11   ***Sean Suarez***

12       4.119 At all times relevant to this matter, VPD's officer Sean Suarez was a

13   police officer, in a police uniform, and acting under the color of law.

14       4.120 At all times relevant Ofc. Suarez was wearing body armor.

15       4.121 At all times relevant Ofc. Suarez was armed with a taser.

16       4.122 At all times relevant Ofc. Suarez was armed with a .45 caliber handgun.

17       4.123 Ofc. Suarez's handgun was a Springfield 1911, loaded with 8 rounds.

18       4.124 At all times relevant Ofc. Suarez's handgun was loaded with hollow

19   point type bullets.

20       4.125 Ofc. Suarez radio call sign was "2M11."

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021

17

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

4.126 At 11:14:08 Ofc. Suarez stated over the police radio that Mr. Abbe was "BEING NON COMPLIANT HOLDING TWO FLAGS REFUSING TO DROP THEM."

4.127 Ofc. Suarez fired two rounds at Abbe during the incident on 4/28/20.

4.128 Ofc. Suarez was moving towards Mr. Abbe while shooting at him.

4.129 At the time Ofc. Suarez shot at Mr. Abbe, Mr. Abbe had already turned away from Sgt. Alie, and was falling down and away, face first, to the ground, after having been shot in chest and the back by Sgt. Alie.

4.130 On 5/4/2020, Det. Fred Neiman interviewed Ofc. Suarez.

4.131 Ofc. Suarez was assisted during the Neiman 5/4/20 interview by his attorney Nicole Robbins.

4.132 Ofc. Suarez observed Sgt. Alie shoot Mr. Abbe.

4.133 During Ofc. Suarez's 5/4/20 interview, Ofc. Suarez admitted to shooting twice at Mr. Abbe.

4.134 During Ofc. Suarez's 5/4/20 interview, when Suarez was asked "Do you recall, um, Sergeant Alie having a dialogue with [William Abbe]," Suarez stated "I don't remember if he had any dialogue."

4.135 During Ofc. Suarez's 5/4/20 interview, Ofc. Suarez stated, "I don't remember [Abbe] being in actual dialogue with anybody else."

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

1    4.136 During Ofc. Suarez's 5/4/20 interview, Ofc. Suarez described Mr. Abbe
2    as walking towards Sgt. Alie before Sgt. Alie shot him.

3    4.137 During Ofc. Suarez's 5/4/20 interview, when Ofc. Suarez was asked
4    "Did you recognize [William Abbe] from prior contacts?" he answered, "I had never
5    seen him before."

6    4.138 During Ofc. Suarez's 5/4/20 interview, when Ofc. Suarez was asked
7    what his "sight picture looked like" when he fired, he said, "I just remember him
8    having dark clothes on and focused center mass."

9    4.139 When Ofc. Suarez shot at Mr. Abbe, Ofc. Suarez was aiming at Mr.
10   Abbe's center mass.

11   4.140 During Ofc. Suarez's 5/4/20 interview, when Ofc. Suarez was asked if
12   "when [Mr. Abbe] fell to the ground, did you feel like, um, he was, uh, not a threat
13   at distance at that point?", Ofc. Suarez admitted that was "correct."

14   4.141 Ofc. Suarez did not have any knowledge of Mr. Abbe prior to the
15   incident in which he shot him.

16   4.142 Ofc. Suarez did not render first aid to Mr. Abbe after he shot him.

17   **_Sammy Abdala_**

18   4.143 At all times relevant to this matter, VPD's officer Sammy Abdala was
19   a police officer, in a police uniform, and acting under the color of law.

20   4.144 Ofc. Abdala's designated radio call sign is "2P81."

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021
19
9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

1       4.145 At all times relevant Ofc. Abdala was wearing body armor.

2       4.146 At all times relevant Ofc. Abdala was armed with a taser.

3       4.147 At all times relevant Ofc. Abdala was armed with a 9mm handgun.

4       4.148 At all times relevant Ofc. Abdala's handgun was loaded with hollow

5  point type bullets.

6       4.149 Ofc. Abdala's handgun was modified with a sandpaper style grip which

7  provides extra control and accuracy in shooting.

8       4.150 Ofc. Abdala's handgun was also modified to include a red dot reflex

9  style optic for greater accuracy in aiming

10      4.151 In the time period leading up to, and including, the 4/8/20 incident, Ofc.

11 Abdala was assigned as a Neighborhood Police Officer.

12      4.152 Ofc. Abdala considered Sgt. Alie a friend.

13      4.153 Ofc. Abdala and Sgt. Alie would work out together in the evenings.

14      4.154 According to Ofc. Abdala, Sgt. Alie and he "have a lot of history

15 together."

16      4.155 Ofc. Abdala typically did not respond to patrol calls.

17      4.156 Ofc. Abdala had never seen Mr. Abbe before the incident on 4/28/20.

18      4.157 Ofc. Abdala fired one round at Mr. Abbe.

19      4.158 Ofc. Abdala was aiming center mass when he fired one round at Mr.

20 Abbe.

ANGUS LEE
LAW FIRM, PLLC

1    4.159 At the time Ofc. Abdala shot at Mr. Abbe, Mr. Abbe had already walked

2    away from Sgt. Alie, had been shot in the back twice, and was lying motionless face

3    down on the ground.

4    4.160 At the time Ofc. Abdala shot at Mr. Abbe, Ofc. Abdala was standing at

5    least 30 feet from Mr. Abbe.

6    4.161 At the time that Ofc. Abdala fired upon Mr. Abbe, Ofc. Abdala was

7    standing behind a vehicle, with the vehicle between him and Mr. Abbe.

8    4.162 Ofc. Abdala was not in fear of danger to himself when he shot at Mr.

9    Abbe.

10    4.163 On 5/1/2020, Ofc. Abdala was interviewed by Det. Fred Neiman.

11    4.164 During that interview, Ofc. Abdala was assisted by his attorney Steven

12    Myers.

13    4.165 During the 5/1/20 interview, when Ofc. Abdala was asked if he

14    remembered what Mr. Abbe said before he walked towards Sgt. Alie, Ofc. Abdula

15    stated, "I can't recall a lot of what was said," and further stated that he was not certain

16    what Mr. Abbe said when walking towards Sgt. Alie.

17    4.166 During the 5/1/20 interview, Ofc. Abdala stated, "All I remember is

18    seeing the window and my red dot, I believed was, you know, center ma- all I could

19    see was - he had dark clothing. Saw the red dot, pressed the trigger where it, um, the

20    bang was very low."

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021

21

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

4.167 During the interview of Ofc. Abdala, for the VPD internal investigation (IAC: 2020-0047), when Ofc. Abdala was asked, "Did you personally use any de-escalation tactics during this incident?" Ofc. Abdala answered "No sir."

4.168 Ofc. Abdala had no prior knowledge of Mr. Abbe and had never seen him before the incident on 4/28/20.

4.169 Ofc. Abdala did not render any first aid to Mr. Abbe after shooting him.

***Officer Brandon Degraw***

4.170 Officer Brandon Degraw was involved in the interactions with Mr. Abbe on 4/28/20.

4.171 Ofc. Degraw was an initial responding officer to the incident.

4.172 Ofc. Degraw had never seen Mr. Abbe before that day.

4.173 Ofc. Degraw drew his handgun, but did not fire his handgun.

4.174 Ofc. Degraw recognized Mr. Abbe's behavior was at least in part the result of mental illness.

4.175 Ofc. Degraw never smelled any odor of alcohol on Mr. Abbe.

4.176 On information and belief, Mr. Abbe was not intoxicated at the time he was killed by the officers.

4.177 On information and belief, Mr. Abbe was not under the influence of drugs at the time he was killed by the officers.

4.178 Ofc. Degraw made contact with Steve Moffa at the scene.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021

22

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

1    4.179 Ofc. Degraw observed Steve Moffa to be "stable."

2    4.180 Mr. Moffa was interviewed later on 4/28/20 by Det. Jon Shields.

3    4.181 During Ofc. Shields interview of Mr. Moffa, Mr. Moffa denied being

4    assaulted by Mr. Abbe.

5    4.182 Instead, Mr. Moffa told Ofc. Shields that he had been sitting at the

6    picnic table in the park when "a group of Islander teenagers attempted to rob him."

7    4.183 Mr. Moffa also said that one of the teenagers in the group "had hit him

8    in the back of the head with a piece of re-bar."

9    **_Officer Joshua DeFebbo_**

10   4.184 Officer Joshua DeFebbo was involved in the interactions with Mr. Abbe

11   on 4/28/20.

12   4.185 Ofc. DeFebbo's radio call sign was 2E13.

13   4.186 At 11:13:15, Ofc. DeFebbo stated over the police radio that Mr. Abbe

14   was still on scene and sitting in a chair.

15   4.187 At 11:18:03, A VPD officer, radio call sign 2P82, stated over the police

16   radio that Mr. Moffa was conscious and breathing.

17   4.188 At 11:18:31, Ofc. Defebbo stated over the police radio that shots had

18   been fired by the officers.

19   4.189 Ofc. DeFebbo did not fire his handgun.

20   4.190 Ofc. DeFebbo never told Mr. Abbe that he was under arrest.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790                                    23
Tuesday, October 26, 2021

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

4.191 Ofc. DeFebbo recognized the items Mr. Abbe had been holding to be hollow concrete forming posts that are commonly used in construction to help secure molding frames in place when a concrete foundation is poured.

4.192 A few weeks prior to the homicide of Mr. Abbe, Ofc. DeFebbo had an interaction with Mr. Abbe.

4.193 During the earlier incident, Mr. Abbe had already been contacted by some VPD officers when Ofc. Defebbo arrived at the scene of the interaction.

4.194  Ofc. Defebbo was coming in from the west down Fourth Plain and Ofc. Epperson was walking mid-path behind Mr. Abbe with his canine.

4.195 Ofc. Defebbo yelled at Mr. Abbe that he needed to stop walking.

4.196 Mr. Abbe yelled back at Ofc. Defebbo that he was not going to stop walking away and that VPD was harassing him.

4.197 Ofc. Defebbo yelled at Mr. Abbe that he needed to stop and talk with them, but Mr. Abbe just continued walking away.

4.198 Shortly after this particular VPD contact of Mr. Abbe had begun, the officers terminated their contact with Mr. Abbe because they believed there was no probable cause to arrest Mr. Abbe and because they believed there was no victim of any crime committed by Mr. Abbe.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021

24

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

*Officer Ken Suvada*

4.199 On 4/28/2020, at approximately 11:15 AM, Officer Ken Suvada responded to the scene.

4.200 While in route to the location, Ofc. Suvada advised Sgt. Alie, and others, over the police radio that he was in route with the 40mm less lethal.

*Officer Rocky Epperson*

4.201 Officer Rocky Epperson was involved with the interactions with Mr. Abbe on 4/28/20.

4.202 Ofc. Epperson's radio call sign is 2h9.

4.203 Ofc. Epperson did not fire his handgun.

4.204 Ofc. Epperson was a K9 handler.

4.205 Ofc. Epperson arrived at the scene shortly before Sgt. Alie fired the first shot at Mr. Abbe.

4.206 When Ofc. Epperson was parking his car at the scene he heard someone say "shots fired" over the police radio.

4.207 Ofc. Epperson had self-dispatched to the incident because he knew from experience that the presence of a K9 can help mitigate the need for officers to use force.

4.208 Based on Ofc. Epperson's experience, he knew that he had a pretty high success rate of people complying once officers give a warning with a K9.

COMPLAINT AND DEMAND
NO. 3:21-cv-5790
Tuesday, October 26, 2021

25

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

1    4.209 When Ofc. Epperson got out of his car and approached Mr. Abbe, Ofc.

2    Epperson called for emergency medical support over the radio.

3    4.210 When Ofc. Epperson arrived, he could not see anything in Mr. Abbe's

4    hands.

5    4.211 Ofc. Epperson heard one of the treating emergency medical responders

6    say "we do have a weak pulse."

7    4.212 While treating Mr. Abbe after he was shot, one of the treating

8    emergency medical responders said "we do have a weak pulse."

9    4.213 Ofc. Epperson could see Mr. Abbe was experiencing "agonal

10    breathing."

11    ***Officer Bret Olson***

12    4.214 Officer Bret Olson was involved in the interactions with Mr. Abbe on

13    4/28/20.

14    4.215 Ofc. Olson did not fire his handgun.

15    4.216 Ofc. Olson said Mr. Abbe "caught my attention earlier in the day."

16    4.217 Ofc. Olson believed Mr. Abbe was suffering from mental health issues

17    that day.

18    ***Officer Christopher Douville***

19    4.218 Officer Christopher Douville arrived on scene after the killing of Mr.

20    Abbe.

4.219 Ofc. Douville asked Ofc. Suarez if he had been involved in the shooting of Mr. Abbe.

4.220 Ofc. Suarez admitted to Ofc. Douville that he had been involved in the shooting of Mr. Abbe.

4.221 Ofc. Douville asked Ofc. Suarez no further questions.

4.222 Instead, Ofc. Douville acted as a "Peer Support Member" for Ofc. Suarez, and escorted Ofc. Suarez to Ofc. Douville 's cruiser and later escorted Ofc. Suarez to a location where Ofc. Suarez and Ofc. Douville awaited guild-appointed legal representation for Ofc. Suarez.

**Officer Dustin Nicholson**

4.223 Officer Dustin Nicholson is employed by VPD.

4.224 Ofc. Nicholson's radio call sign is 2D21.

4.225 Ofc. Nicholson was involved in the interactions with Mr. Abbe.

4.226 When Ofc. Nicholson arrived at or near the parking lot, he exited his patrol vehicle while bringing his AR-15 style rifle with him.

4.227 Ofc. Nicholson was with the group of officers visible in the video of the incident.

4.228 In the video, Ofc. Nicholson is the officer with the rifle.

4.229 Ofc. Nicholson observed other officers shoot Mr. Abbe, but Ofc. Nicholson did not fire his weapon.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021
27
9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

4.230 Ofc. Nicholson saw Sgt. Alie fire the first shot at Mr. Abbe.

4.231 Ofc. Nicholson saw that first round strike Mr. Abbe in the chest.

4.232 Ofc. Nicholson saw Sgt. Alie fire the second shot at Mr. Abbe.

4.233 Ofc. Nicholson saw that second-round strike Mr. Abbe in the back.

*Autopsy*

4.234 Mr. Abbe succumbed to his injuries and died at approximately 11:49 AM.

4.235 Mr. Abbe suffered great and extreme pain, discomfort, and distress from the time Mr. Abbe was shot at 11:18 AM to the time he died at approximately 11:49 AM.

4.236 On 4/29/20, Det. Joe Swenson attended the autopsy of Mr. Abbe.

4.237 During the autopsy, Det. Swenson observed that Mr. Abbe had three injuries on his chest, and two on his back.

4.238 Forensic Pathologist Dr. Megan Quinn performed the autopsy of Mr. Abbe.

4.239 On information and belief, Dr. Quinn concluded that the cause of death was multiple gunshot wounds.

4.240 On information and belief, Dr. Quinn concluded that Mr. Abbe's death was a homicide.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021

28

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

1   4.241 On information and belief, Dr. Quinn concluded that Mr. Abbe was shot

2   in the back two times.

3   4.242 On information and belief, Dr. Quinn concluded that Mr. Abbe was shot

4   in the chest one time.

5   4.243 On information and belief, Dr. Quinn concluded that Mr. Abbe was shot

6   in the lower abdomen or upper groin area one time.

7   4.244 On information and belief, one or more of the bullets fired upon Mr.

8   Abbe struck and damaged his heart.

9   4.245 On information and belief, one or more of the bullets fired upon Mr.

10   Abbe struck and damaged his spine.

11   4.246 On information and belief, one or more of the bullets fired upon Mr.

12   Abbe struck and damaged his lungs.

13   4.247 On information and belief, one of the bullets fired upon Mr. Abbe

14   struck and damaged his intestines.

15   4.248 During the autopsy, there was one projectile found in Mr. Abbe's left

16   hip.

17   4.249 On information and belief, Dr. Quinn concluded that the bullet found

18   in Mr. Abbe's left hip was the bullet that had entered Mr. Abbe's body in the lower

19   abdomen or upper groin area.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021
29
9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

1    4.250 On information and belief, the bullet found in Mr. Abbe's left hip was

2    the bullet that had entered his body in the lower abdomen or upper groin area.

3    4.251 The bullet found in Mr. Abbe's left hip was taken as evidence.

4    4.252 The bullet found in Mr. Abbe's left hip was assigned the evidence

5    number 56.

6    4.253 The bullet found in Mr. Abbe's left hip was an intact, copper-jacketed,

7    not deformed, .45 caliber bullet.

8    4.254 Evidence number 56 was one of the bullets fired by Ofc. Suarez.

9    4.255 During the autopsy, Det. Swenson examined Mr. Abbe's clothing, and

10   located what appeared to Det. Swenson to be a 9mm bullet stuck to the inside of the

11   front of Mr. Abbe's leather jacket.

12   4.256 The bullet found in Mr. Abbe's jacket was assigned the evidence

13   number 71.

14   4.257 On information and belief, Dr. Quinn located a fresh abrasion on the

15   left side of Mr. Abbe's face and small fresh abrasions to the top of his forehead.

16   ***Crime Laboratory Test Results***

17   4.258 The handguns used by Sgt. Alie, Ofc. Suarez, and Ofc. Abdala were

18   taken into evidence as part of an investigation following the killing of Mr. Abbe.

19   4.259 The Heckler & Koch 9mm handgun used by Sgt. Alie to shoot at Mr.

20   Abbe was assigned evidence number 29.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021

30

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

1    4.260 The Glock, 9mm handgun used by Ofc. Abdala to shoot at Mr. Abbe

2    was assigned evidence number 30.

3    4.261 The Springfield Armory, .45 caliber handgun used by Ofc. Suarez to

4    shoot at Mr. Abbe was assigned evidence number 31.

5    4.262 All three handguns were tested as part of the investigation and

6    determined to be operable.

7    4.263 The bullet that was found stuck in the C-Tran van near the scene was

8    assigned evidence item number 49.

9    4.264 Evidence item 49 (bullet in van) was compared to evidence item 30

10   (Ofc. Abdala's handgun) by the Washington State Crime Laboratory, but due to a

11   lack of sufficient markings on, and damage to, evidence item 49, it could not be

12   identified or eliminated as having been fired from evidence item 30.

13   4.265 Item 49 (bullet in van) was eliminated as having been fired from the

14   Heckler & Koch pistol submitted as item 29 (Sgt. Alie's handgun) due to differences

15   in class and individual characteristics.

16   4.266 The fired bullet submitted as evidence item 56 (bullet in Mr. Abbe's

17   hip) was identified by the Washington State Crime Laboratory as having been fired

18   from the Springfield Armory pistol submitted as evidence item 31 (Ofc. Suarez's

19   handgun) based on sufficient agreement of individual characteristics.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021

31

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

1    4.267 The fired bullet found in Mr. Abbe's hip was fired from the pistol used

2    by Ofc. Suarez to shoot at Mr. Abbe.

3    4.268 The fired bullet submitted as evidence item 71 (bullet in Mr. Abbe's

4    jacket) was identified by the Washington State Crime Laboratory as having been

5    fired from the Heckler & Koch pistol submitted as evidence item 29 (Sgt. Alie's

6    handgun) based on sufficient agreement of individual characteristics.

7    4.269 The fired bullet found in Mr. Abbe's jacket was fired from the pistol

8    used by Sgt. Alie to shoot at Mr. Abbe.

9    ***Unjustified Force: No Immediacy of Threat***

10   4.270 The force used by Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala

11   on 4/28/20 to subdue and seize Mr. Abbe was excessive under the facts and

12   circumstances as they were known to the officers.

13   4.271 The conduct of Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala on

14   4/28/20 was unjustified and unreasonable.

15   4.272 The right to be free of excessive force by State actors was well known

16   to Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala on 4/28/20, and was clearly

17   established at the time of these acts and events described herein.

18   4.273 Prior to the incident on 4/28/20, Defendants Sgt. Alie, Ofc. Suarez, and

19   Ofc. Abdala had each been trained in the concept of "time, distance and shielding."

COMPLAINT AND DEMAND
NO.  3:21-cv-5790                                    32
Tuesday, October 26, 2021

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

1       4.274 Despite training on how to use "time, distance and shielding,"

2   Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala, unreasonably failed or refused

3   to apply their "time, distance and shielding" training when interacting with Mr.

4   Abbe.

5       4.275 Defendants Sgt. Alie's, Ofc. Suarez's, and Ofc. Abdala's, unreasonable

6   failure or refusal to use their "time, distance and shielding" training was an actual

7   and proximate cause of Mr. Abbe's death.

8       4.276 Although there were numerous armed law enforcement officers

9   involved in the interaction with Mr. Abbe, the other officers did not discharge their

10  weapons nor saw the need to do so.

11      4.277 After Mr. Abbe had stopped walking towards Sgt. Alie, it was not

12  reasonable for Defendants Sgt. Alie, Ofc. Suarez, or Ofc. Abdala to believe that Mr.

13  Abbe posed an imminent threat of injury or serious bodily harm to any officer or

14  anyone.

15      4.278 After Mr. Abbe had stopped walking towards Sgt. Alie, no reasonable

16  officer would believe Mr. Abbe posed an imminent threat of death or serious bodily

17  harm sufficient to justify the use of deadly force on Mr. Abbe.

18      4.279 After Mr. Abbe had been shot in the chest and turned away from Officer

19  Alie, it was not reasonable for Defendants Sgt. Alie, Ofc. Suarez, or Ofc. Abdala to

COMPLAINT AND DEMAND
NO. 3:21-cv-5790
Tuesday, October 26, 2021

33

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

1  believe that Mr. Abbe posed an imminent threat of serious bodily harm to any officer

2  or anyone.

3      4.280 After Mr. Abbe had been shot in the chest and turned away from Officer

4  Alie, no reasonable officer would believe that Mr. Abbe posed an imminent threat

5  of death or serious bodily harm sufficient to justify the use of deadly force on Mr.

6  Abbe.

7      4.281 After Mr. Abbe had been shot twice and started to fall face down on the

8  ground, it was not reasonable for Defendants Sgt. Alie, Ofc. Suarez, or Ofc. Abdala,

9  to believe that Mr. Abbe posed an imminent threat of serious bodily harm to any

10 officer or anyone.

11     4.282 After Mr. Abbe had been shot twice and started to fall face down on the

12 ground, no reasonable officer would believe Mr. Abbe posed an imminent threat of

13 death or serious bodily harm sufficient to justify the use of deadly force on Mr. Abbe.

14     4.283 After Mr. Abbe was lying face down on the ground, it was not

15 reasonable for Defendants Sgt. Alie, Ofc. Suarez, or Ofc. Abdala to believe that Mr.

16 Abbe posed an imminent threat of serious bodily harm to any officer or anyone.

17     4.284 After Mr. Abbe was lying face down on the ground, no reasonable

18 officer would believe Mr. Abbe posed an imminent threat of death or serious bodily

19 harm sufficient to justify the use of deadly force on Mr. Abbe.

COMPLAINT AND DEMAND
NO. 3:21-cv-5790
Tuesday, October 26, 2021

34

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

1    4.285 Indeed, Mr. Abbe's death via shots fired when he was standing still,

2    into his back, and also while he was face down on the ground, shocks the conscience.

3    4.286 It was unconscionable for Defendants Sgt. Alie, Ofc. Suarez, and Ofc.

4    Abdala to shoot at and kill Mr. Abbe after he had stopped moving towards Sgt. Alie,

5    was walking away from Sgt. Alie, or when he was lying face down on the ground.

6    4.287 In fatally shooting Mr. Abbe, Defendants Sgt. Alie, Ofc. Suarez, and

7    Ofc. Abdala failed to use ordinary care to avoid unreasonably escalating the

8    encounter to the use of deadly force.

9    4.288 In failing to use Sgt. Alie's less-lethal shotgun, Sgt. Alie failed to use

10   ordinary care to avoid unreasonably escalating the encounter to the use of deadly

11   force.

12   4.289 In failing to use the riot type shield available at the scene, or other

13   physical barriers, Sgt. Alie and Suarez failed to use ordinary care to avoid

14   unreasonably escalating the encounter to the use of deadly force.

15   4.290 In failing to wait for the 40mm less lethal to arrive before Sgt. Alie

16   confronted Mr. Abbe during an obvious mental health crisis, Sgt. Alie failed to use

17   ordinary care to avoid unreasonably escalating the encounter to the use of deadly

18   force.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021

35

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

4.291 In failing to wait for the K9 to arrive before Sgt. Alie confronted Mr. Abbe during an obvious mental health crisis, Sgt. Alie failed to use ordinary care to avoid unreasonably escalating the encounter to the use of deadly force.

4.292 In choosing to separate himself from the group of officers on scene, and then confront Mr. Abbe during an obvious mental health crisis, while Sgt. Alie was alone, Sgt. Alie failed to use ordinary care to avoid unreasonably escalating the encounter to the use of deadly force.

4.293 In shooting Mr. Abbe in the chest after Mr. Abbe had stopped walking towards Sgt. Alie, Sgt. Alie failed to use ordinary care to avoid unreasonably escalating the encounter to the use of deadly force.

4.294 In shooting Mr. Abbe in the back, after Mr. Abbe had turned away from Sgt. Alie, Sgt. Alie failed to use ordinary care to avoid unreasonably escalating the encounter to the use of deadly force.

4.295 In shooting at Mr. Abbe after he was already falling down and away from Sgt. Alie, Ofc. Suarez, and Ofc. Abdala failed to use ordinary care to avoid unreasonably escalating the encounter to the use of deadly force.

4.296 In shooting at Mr. Abbe after he was already lying down on the ground, Ofc. Abdala failed to use ordinary care to avoid unreasonably escalating the encounter to the use of deadly force.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790                                36
Tuesday, October 26, 2021

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

1      4.297 VPD Policy 463.3, RECOGNIZING A PERSON IN CRISIS, states that

2  "Officers should exercise special skills and abilities to effectively deal with the

3  person" "suspected to have a mental health issue or be in crisis."

4      4.298 Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala, failed to comply

5  with VPD Policy 463.3.

6      4.299 VPD Policy 463.7, DE-ESCALATION, states that "Officers should

7  consider that taking no action or passively monitoring the situation may be the most

8  reasonable response to a mental health crisis."

9      4.300 Under VPD Policy 463.7, DE-ESCALATION, once it is determined

10  that a situation is a mental health crisis and immediate safety concerns have been

11  addressed, responding members should generally be patient, polite, calm, courteous,

12  avoid overreacting, move slowly and in a non-threatening manner, and provide for

13  sufficient avenues of withdrawal or escape should the situation become volatile.

14      4.301 Under VPD Policy 463.7, DE-ESCALATION, once it is determined

15  that a situation is a mental health crisis and immediate safety concerns have been

16  addressed, responding members should generally NOT use stances or tactics that can

17  be interpreted as aggressive.

18      4.302 Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala failed to comply

19  with VPD Policy 463.7.

4.303 The actions of Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala on 4/28/20, were unreasonable, negligent, and reckless, and they failed to follow accepted police standards.

4.304 The actions of Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala on 4/28/20 imposed substantial harm on Mr. Abbe during the period of time after he was shot by Defendants until he ultimately passed way.

4.305 The excruciating pain and fear Mr. Abbe felt during the final hour of his life is unquantifiable.

4.306 As a result of the acts of Defendants, Mr. Abbe has suffered injury to body and mind, significant pain, emotional distress, humiliation, disfigurement, disability, and death.

4.307 The City of Vancouver is liable for these intentional, reckless, and negligent actions by its officers, which foreseeably resulted in the unreasonable use of deadly force on Mr. Abbe.

***Invalid Investigation and Ratification***

4.308 Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala were each assigned an officer by VPD to accompany and support them as the investigation into this matter began.

4.309 At all times relevant to this matter, VPD Chief McElvain was acting under the color of law and in his official capacity as Chief of VPD.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021

38

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

4.310 Chief McElvain ratified the use of force on, and the killing of, Mr. Abbe by Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala.

4.311 VPD is comprised of approximately 220 sworn officers. The department is divided into an Administrative Bureau, Investigations Bureau, and Patrol Bureau, each of which is led by an Assistant Chief.

4.312 VPD has two precincts: East and West.

4.313 Each of the two VPD precincts has two lieutenants.

4.314 In a press statement related to the killing of Mr. Abbe, Chief McElvain stated, "The investigation into the exact events that led to the outcome of yesterday's officer-involved shooting will be conducted by the Regional Independent Investigative Team, entirely independent from the Vancouver Police Department as is required by Initiative 940 and SHB 1064."

4.315 However, the investigation was not conducted in compliance with Washington State's Law Enforcement Training and Community Safety Act (LETCSA) since it did not include any nonlaw enforcement community representatives.

4.316 LETSCA requires that, in cases where a police officer kills someone while on duty, the team responsible for investigation of the killing includes "at least two nonlaw enforcement community representatives who operate completely

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021

39

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

1    independent of any involved agency to conduct investigations of police deadly force

2    incidents." WAC 139-12-020.

3        4.317 The LETSCA also requires the names of the nonlaw enforcement

4    representatives be made available to the public.  WAC 139-12-030(2)(b).

5        4.318 In fact, neither VPD, the Clark County Sheriff's Office, nor any other

6    agency involved in the investigation of the killing of Mr. Abbe assigned even a single

7    nonlaw enforcement representative to the investigation team.

8        4.319 Neither VPD nor any other police agency involved in the investigation

9    made the names of any nonlaw enforcement representatives to the investigation

10   public.

11       4.320 As a result, the entire law enforcement investigation into the law

12   enforcement killing of Mr. Abbe was conducted only by members of law

13   enforcement without any civilian oversight on the team.

14       4.321 The LETCSA was passed into law so that investigations into officer

15   involved shootings would be transparent and so that the public could trust the

16   outcome of the investigation.

17       4.322 The refusal or failure by VPD and the Clark County Sheriff's Office to

18   comply with state law calls into question impartiality of the entire law enforcement

19   investigation into the killing of William Abbe.

ANGUS LEE
LAW FIRM, PLLC

4.323 Eventually, VPD conducted an administrative review of the killing of Mr. Abbe.

4.324 The VPD internal review of the killing of William Abbe was designated case number IAC 2020-0047.

4.325 VPD's standard practice and procedure for conducting internal reviews of an officer involved shooting (OIS) in place and prior to, the killing of Mr. Abbe, involved having an Administrative Investigation Summary (AIS) of the OIS prepared by either a sergeant or a lieutenant.  This AIS would then typically be reviewed by another lieutenant who would ratify the shooting based off of a review of the AIS.

4.326 VPD's standard practice and procedure for conducting internal reviews of an OIS in place at the time of, and prior to, the killing of Mr. Abbe did not include review of, or input on, the AIS by the Chief of Police.

4.327 VPD did not follow its standard practice or procedure for conducting internal reviews of an OIS when it conducted the investigation into the killing of Mr. Abbe.

4.328 Instead, Chief McElvain, involved himself directly in the preparation and editing of the final AIS into IAC 2020-0047.

4.329 Chief McElvain made written suggestions on how to edit the AIS in IAC 2020-0047.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021
41
9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

4.330 Chief McElvain also had multiple discussions about the substance of the AIS in IAC 2020-0047 with his assistant chiefs while IAC 2020-0047 was under review.

4.331 On information and belief, during those discussions he expressed to his assistant chiefs that he believed the killing of Mr. Abbe was justified.

4.332 Before the final version of the AIS in IAC 2020-0047 was formalized as a "final" draft, it was emailed to Chief McElvain for final review so that he could make any final changes to the summary that he deemed necessary.

4.333 On 10/06/20, VPD Sgt. David Krebs of the VPD Professional Standards Unit sent an email to Defendants Sgt. Alie, Ofc. Suarez, Ofc. Abdala, and VPD Ofc. Tyler Chavers, writing: "I am about finished with the investigation, however, we have decided to conduct administrative interviews with all of the involved officers. I will need to schedule interviews with each of you in the next couple of weeks. I'm sure you will want to seek representation for the interview so I am giving you some lead time to arrange that. Please let me know when you will be available for the interview and call me if you have any questions."

4.334 The subject line of Krebs 10/6/20 email was "Admin Interviews for IAC 2020-0047 (William Abbe OIS)"

4.335 Ofc. Chavers forwarded Krebs 10/06/20 email to Neil Martin, writing only "FYI…"

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021

42

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

1    4.336 Neil Martin was President of the Vancouver Police Officers' Guild

2    (VOPG).

3    4.337 The VOPG is the exclusive collective bargaining organization for the

4    Police Officers, Corporals, and Sergeants of the Vancouver, Washington Police

5    Department.

6    4.338 The VPOG represents the interests of its members in disciplinary

7    issues.

8    4.339 VOPG President Martin then forwarded the Krebs 10/6/20 email string

9    to VPD Chief McElvain and VPD Assistant Chief Jeff Mori, writing, "Do either of

10   you have time to chat about this?"

11   4.340 Assistant Chief Mori replied on 10/7/202 at 9:22 AM, writing, "We are

12   getting ready for a Command Staff meeting. Can I call you later this morning?"

13   4.341 On information and belief, Assistant Chief Mori and VOPG President

14   Martin discussed IAC 2020-0047.

15   4.342 On information and belief, Chief McElvain and VOPG President

16   Martin discussed IAC 2020-0047.

17   4.343 On Information and belief, Chief McElvain, Assistant Chief Mori,

18   Assistant Chief Mike Lester, and Assistant Chief Troy Price had a discussion on

19   10/12/20 regarding the draft AIS for IAC 2020-0047.

COMPLAINT AND DEMAND
NO. 3:21-cv-5790
Tuesday, October 26, 2021
43
9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

1     4.344 On 10/12/2020, at 04:20:22 PM, Assistant Chief Mori emailed a 20-

2   page draft of the AIS for IAC 2020-0047 to Chief McElvain, Assistant Chief Mike

3   Lester, and Assistant Chief Troy Price for review.

4     4.345 In that 10/12/2020 email, Assistant Chief Mori wrote "Gents, This is

5   the document we discussed earlier today. Feel free to review the entire document,

6   but if your time is limited, focus on the added policies. Jeff."

7     4.346 On 10/13/2020 at 2:53 PM, Chief McElvain responded to Assistant

8   Chief Mori's 10/12/20 email, writing "Gents, See attached…my quick

9   review/comments. James"

10     4.347 Attached to Chief McElvain's email to Assistant Chiefs Mori was a

11   word    document    entitled    "IAC_2020-0047_-_Investigative_Summary_jjm

12   edits_10.09.2020 (2) - jmc.docx."

13     4.348 "IAC_2020-0047_-_Investigative_Summary_jjm edits_10.09.2020 (2)

14   - jmc.docx." was a copy of the draft of the AIS for IAC 2020-0047 that had

15   previously been prepared by Sgt. Krebs, but with written comments from Chief

16   McElvain suggesting how the AIS should be edited or modified.

17     4.349 For example, the original 20-page draft of the AIS prepared by Sgt.

18   Krebs stated "On April 28, 2020 at about 11:10 hours, CTRAN Security Officer

19   Casey Wishon reported a physical disturbance involving William Abbe and Steven

1  Moffa (CAD event 20141399). Wishon was already in the area for a separate call

2  for service involving the two men when the fight broke out."

3       4.350 In Chief McElvain's comments, he objected to the use of the language

4  "when the fight broke out" and communicated his objection in a written comment

5  on the draft summary.

6       4.351 In response to Chief McElvain's influence and direction, the AIS was

7  changed so that the phrase "when the fight broke out" was changed to say "when the

8  disturbance occurred."

9       4.352 Chief McElvain made at least five (5) written comments on the AIS

10  before he sent it back to the Assistant Chiefs.

11       4.353 Chief McElvain highlighted two other sections of the AIS before he

12  sent it back to the Assistant Chiefs.

13       4.354 Chief McElvain's written comments on the AIS were communicated to

14  Sgt. Krebs before the AIS was finalized.

15       4.355 Chief McElvain's written comments on the AIS were intended to

16  influence the administrative investigation in the favor of Defendants Sgt. Alie, Ofc.

17  Suarez, and Ofc. Abdala.

18       4.356 Chief McElvain's written comments on the AIS were intended to

19  influence the final AIS in the favor of Defendants Sgt. Alie, Ofc. Suarez, and Ofc.

20  Abdala.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790                                          45
Tuesday, October 26, 2021

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

4.357 On information and belief, in conversations between Chief McElvain and the assistant chiefs regarding IAC 2020-0047, Chief McElvain expressed to his assistant chiefs that he believed the Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala were justified in killing Mr. Abbe.

4.358 On information and belief, in conversations between Chief McElvain and the assistant chiefs regarding IAC 2020-0047, Chief McElvain expressed that he believed the Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala should be exonerated by VPD.

4.359 On information and belief, the conversations between Chief McElvain and the assistant chiefs regarding IAC 2020-0047 were not a secret inside VPD.

4.360 On information and belief, that Chief McElvain had made editorial suggestions to the IAC 2020-0047 AIS was communicated to Sgt. Krebs and others.

4.361 When Sgt. Krebs issued his final draft AIS, he was aware that Chief McElvain wanted Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala exonerated by VPD.

4.362 On 10/28/2020, Sgt. Krebs sent an email to VPD Lt. Steve Neal, writing "Sir, Attached is my summary for IAC 2020-0047 (OIS). Please review when you have time. Thanks, Sergeant David Krebs."

4.363 Later on 10/28/2020, Lt. Neal forwarded Krebs' email to Assistant Chief Mori, writing, "Sir, Here is Sgt. Krebs' OIS summary, as promised."

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021

46

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

4.364 On 10/29/20, Assistant Chief Mori forwarded the Krebs/Neal email and attached AIS to Chief McElvain, writing "FYI – I am still reviewing this also."

4.365 Attached to the 10/29/20 email was a word document with the electronic file name "IAC 2020-0047 - Investigative Summary.docx."

4.366 On information and belief, Chief McElvain reviewed the final draft of the AIS before the AIS was formally published.

4.367 The final version of the AIS never mentioned that Mr. Abbe was shot in the back.

4.368 Chief McElvain, having reviewed the final AIS (which he had been involved in crafting) took no action to sanction or retrain Defendants Sgt. Alie, Ofc. Suarez, or Ofc. Abdala.

4.369 Chief McElvain, having reviewed and edited the AIS, thereby ratified the conduct of Defendants Sgt. Alie, Ofc. Suarez, or Ofc. Abdala on 4/28/20.

4.370 The City of Vancouver's ratification of the unjustified shooting of Mr. Abbe continues and its failure to take corrective action reflects its deliberate indifference to the danger of constitutional violations and physical harm created by its policies and practices.

4.371 As the Chief of Police involved in the drafting of the AIS, Chief McElvain had authority to ratify or denounce the actions of Defendants Sgt. Alie, Ofc. Suarez, or Ofc. Abdala.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021

47

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

1    4.372 On information and belief, Chief McElvain's involvement in the

2    drafting of the AIS was made known to VPD Lt. Knotts, VPD Commander David

3    King, and others inside VPD.

4    4.373 On information and belief, Chief McElvain's desire that the officers be

5    exonerated was made known to VPD Lt. Knotts, VPD Commander David King, and

6    others inside VPD.

7    4.374 Following the issuance of the AIS, VPD Lt. Knotts then issued the

8    formal letter notice of VPD's formal exoneration of Defendants Sgt. Alie, Ofc.

9    Suarez, and Ofc. Abdala.

10   ***VPD***

11   4.375 In June 2019, the Police Executive Research Forum (PERF) was

12   commissioned by the City of Vancouver, Washington to perform a review of VPD.

13   4.376 PERF's review included an examination of the department's policies,

14   training, documentation, and data on use of force and officer involved shootings.

15   4.377 The purpose of this study was not to investigate any particular incident

16   or specific police officer, but rather to identify areas where VPD could improve its

17   core business practices.

18   4.378 PERF's review included a thorough analysis of VPD's use-of-force

19   policies to determine whether they are aligned with national standards.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021

48

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

1    4.379 In addition, PERF analyzed use-of-force data across three years (2017-

2    2019), reviewed use-of-force case files and officer-involved shooting cases, and

3    evaluated training curricula related to use of force and de-escalation.

4    4.380 PERF conducted a broad assessment of VPD's policies, practices,

5    training, and documentation pertaining to use of force.

6    4.381 Throughout the course of this review, PERF's project team regularly

7    discussed its ongoing findings and recommendations with VPD leaders.

8    4.382 During the course of this review, and prior to the killing of Mr. Abbe,

9    PERF recommended to Chief McElvain that he be the final decision maker in all

10   OIS cases.

11   4.383 PERF used the following methods to collect information regarding

12   VPD's policies, practices, training, and documentation pertaining to use of force:

13   4.383.1 PERF reviewed VPD policies;

14   4.383.2 PERF team conducted a site visit to Vancouver in September

15   2019 and conducted numerous follow-up interviews;

16   4.383.3 PERF also conducted focus groups with VPD personnel, city

17   officials, and community members including: The Vancouver

18   City Manager, Vancouver City Council members, The Chief of

19   Police, Assistant Chiefs of Police, Commanders, Lieutenants,

20   Sergeants, Detectives, Patrol officers, Civilian staff members,

COMPLAINT AND DEMAND
NO. 3:21-cv-5790                    49
Tuesday, October 26, 2021

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

1     The Professional Standards Unit, Vancouver Police Officers'

2     Guild leaders, The Records Unit, The Training Unit;

3     4.383.4 During the site visit, PERF also participated in ride-alongs with

4     VPD patrol officers;

5     4.383.5 In addition, the PERF team held two meetings with community

6     members to hear their concerns and input regarding the review;

7     4.383.6 PERF also created an email account for community members

8     to submit their questions and input about the project to ensure

9     that a variety of feedback and perspectives were considered;

10     4.383.7 PERF analyzed use-of-force data across three years (2017-

11     2019), reviewed several dozen use-of-force case files

12     associated with more serious incidents, and reviewed nine

13     officer-involved shooting cases;

14     4.383.8 PERF also evaluated training curricula and lesson plans on

15     topics related to use of force.

16     4.384 In June of 2020, PERF published the "REVIEW OF THE

17     VANCOUVER, WA POLICE DEPARTMENT."

18     4.385 That report presents PERF's findings and recommendations regarding

19     VPD's policies and procedures pertaining to use of force.

COMPLAINT AND DEMAND                         9105A NE HWY 99, STE 200
NO. 3:21-cv-5790                50                  Vancouver, WA 98665
Tuesday, October 26, 2021                  (P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

1       4.386 The Law Enforcement Training and Community Safety Act (LETCSA)

2    was signed into law in Washington state in 2018.

3       4.387 LETCSA mandates that law enforcement officers receive training on a

4    variety of topics, including de-escalation, mental health, implicit and explicit bias,

5    and interacting with people with disabilities and/or behavioral health issues.

6       4.388 During the PERF review, VPD's training unit reported to PERF that

7    they have not yet received the curriculum for the new mandated training topics under

8    LETCSA.

9       4.389 Regarding VPD Policy 300 on Use of Force, it was discovered by PERF

10   that VPD's use-of-force policy did not include definitions for several key terms,

11   including less lethal force, proportionality, and de-escalation.

12      4.390 In fact, VPD Policy 300 on Use of Force (in place when Defendants

13   shot and killed Mr. Abbe) did not direct officers to only use force that is proportional

14   to the threat encountered.

15      4.391 For example, PERF's review found that VPD's policy includes the

16   Carotid Control Hold as a force option, but the policy does not state that this

17   technique is only authorized at the level of lethal force.

18      4.392 Prior to, and at the time of the killing of Mr. Abbe by Defendants,

19   VPD's Policy 300 stated that an officer may use lethal force in circumstances where

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021
51
9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

there is an imminent threat of death or serious bodily injury; but policy language was confusing as to the definition of the term "imminent."

4.393 VPD Policy 300.4(b) stated: "Note that imminent does not mean immediate or instantaneous."

4.394 The above language in VPD Policy 300.4(b) is confusing and makes the use of lethal force more likely.

4.395 Prior to, and at the time of the killing of Mr. Abbe by Defendants, VPD Policy 300 provided language to discourage officers from shooting at moving vehicles, but did not prohibit it.

4.396 VPD Policy 300 states that any use of force shall be documented, but it does not specify the specific types of force that shall be documented in use-of-force reports.

4.397 In addition, VPD does not have a policy requiring supervisors to be dispatched to the scene of critical incidents in which there is a high likelihood that officers may use force.

4.398 Prior to, and at the time of the killing of Mr. Abbe by Defendants, VPD policy also did not include a definition of "De-escalation."

4.399 By comparison, the Seattle Police Department utilized the following definition of de-escalation: "taking action to stabilize the situation and reduce the immediacy of the threat so that more time, options, and resources are available to

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021
52
9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

1    resolve the situation. The goal of deescalation is to gain the voluntary compliance of

2    subjects, when feasible, and thereby reduce or eliminate the necessity to use physical

3    force."

4        4.400 PERF's review found that VPD's Use of Force policy failed to

5    emphasize proportionality, the use of distance and cover, tactical repositioning, and

6    "slowing down" situations that do not pose an immediate threat.

7        4.401 By comparison, the Camden County, New Jersey Police Department's

8    use-of-force policy stated that "when force cannot be avoided through de-escalation

9    or other techniques, officers must use no more force than is proportionate to the

10   circumstances… Some of the factors that officers should consider when determining

11   how much force to use include…whether further de-escalation techniques are

12   feasible,…the time available to an officer to make a decision, and whether additional

13   time could be gained through tactical means…".

14       4.402 PERF's review found that VPD Policy Section 300.3, Use of Force,

15   failed to include language stating that force used by officers should be proportional

16   to the threat.

17   ***Protecting Those in Mental Health Crisis***

18       4.403 VPD did not provide sufficient training to officers on keeping safe, and

19   not harming, those individual dealing with a mental health crisis.

COMPLAINT AND DEMAND
NO. 3:21-cv-5790
Tuesday, October 26, 2021
53
9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

1   4.404 Between 2017 and 2019, VPD's number of use-of-force incidents

2   increased by 65%.

3   4.405 Between February 2017 and March 2019, VPD had nine OIS incidents.

4   4.406 Nearly one-third of subjects over the 2017 and 2019 three-year period

5   had at least one "mental health indicator," as reported by officers.

6   4.407 In addition, a higher percentage of the subjects in "serious" force

7   incidents were thought to have a mental illness, as compared to subjects in the overall

8   use-of-force data.

9   4.408 Nearly one-third (30.4%) of subjects over the three-year period had at

10  least one of these five mental health crisis indicators, as reported by officers.

11  4.409 Below is a graph which accurately represents VPD officer observations

12  related to mental health indicators in use of force situations.



13

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021

54

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

1    4.410 PERF's review also concluded that of the subjects in serious VPD use

2    of force incidents, more than 50% were thought to have a mental illness as reported

3    by officers, as compared to 27.3% of subjects in the overall use-of-force data.

4    4.411 Given that a high percentage of subjects reported to have one of these

5    mental health indicators, VPD should have ensured that officers were receiving

6    adequate training on interacting with subjects who may be experiencing mental or

7    emotional distress.

8    ***No Patrol Vehicle or Body-Worn Cameras***

9    4.412 In November of 2014, the Washington State Attorney General issued a

10   formal opinion that Washington State law does not require police departments to

11   obtain the consent of law enforcement officers to use body cameras attached to

12   police uniforms.  AGO 2014 No. 8.

13   4.413 Chief McElvain has not implemented the use of body cameras at the

14   Vancouver Police Department.

15   4.414 Chief McElvain has not issued body cameras to any officers at the

16   Vancouver Police Department.

17   4.415 Chief McElvain has not mandated the use of body cameras by officers

18   at the Vancouver Police Department.

19   4.416 No officer at the Vancouver Police Department uses body cameras.

COMPLAINT AND DEMAND                                                    9105A NE HWY 99, STE 200
NO.  3:21-cv-5790                              55                        Vancouver, WA 98665
Tuesday, October 26, 2021                                               (P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

1    4.417 Chief McElvain has not implemented the use of patrol vehicle cameras

2    at the Vancouver Police Department.

3    4.418 Chief McElvain has not issued patrol vehicle cameras to the Vancouver

4    Police Department officers.

5    4.419 Chief McElvain has not mandated the use of patrol vehicle cameras by

6    officers at the Vancouver Police Department.

7    4.420 None of the patrol vehicles at the Vancouver Police Department are

8    equipped with cameras.

9    ***Notice of Claim***

10    4.421 In a public statement regarding the killing of William Abbe, Vancouver

11    City Manager Eric Holmes stated "Anytime something like this occurs in a

12    community it is shocking and heartbreaking."

13    4.422 On or about 8/6/2021, a notice required under RCW 4.96 et. seq. was

14    mailed to the City of Vancouver regarding the federal and state law claims pleaded

15    in this complaint.

16    4.423 The notice of claim was received by the City of Vancouver on or about

17    8/11/2021.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790                                        56
Tuesday, October 26, 2021

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

## V.    FIRST CAUSE OF ACTION
### EXCESSIVE FORCE
### (4th Amendment and 42 U.S.C. § 1983 *et seq.*)
### (ALIE) (SUAREZ) (ABDALA)

5.1    Plaintiffs hereby restates and incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

5.2    Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala used excessive force when they arrested and killed Mr. Abbe.

5.3    As described in the preceding paragraphs, the conduct of Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala toward Abbe constituted excessive force in violation of the Fourth Amendment of the United States Constitution.

5.4    The misconduct described in this Count was objectively unreasonable and undertaken with willfulness and reckless indifference to the rights of Mr. Abbe.

5.5    The right to be free from excessive force by state actors was well known to Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala and was clearly established at the time of these acts and events. Qualified immunity defenses are not available to the officer here.

5.6    As a proximate result of Defendants Sgt. Alie's, Ofc. Suarez's, and Ofc. Abdala's violation of the Plaintiff's constitutional rights, Mr. Abbe suffered and will continue to suffer damages in the amount to be proven at trial.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021

57

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

5.7    The conduct of Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala also subjects them to punitive damages in an amount to be proven at trial.

## VI.    SECOND CAUSE OF ACTION
### DUE PROCESS-EXCESSIVE FORCE
### (14th Amendment and 42 U.S.C. § 1983 *et seq.*)
### (ALIE) (SUAREZ) (ABDALA)

6.1    Plaintiff hereby restates and incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

6.2    Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala acted under color of state law.

6.3    Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala used excessive force when they arrested and killed Mr. Abbe.

6.4    As described in the preceding paragraphs, the conduct of Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala, toward Mr. Abbe constituted excessive force in violation of the Fourth Amendment of the United States Constitution.

6.5    The misconduct described in this Count was objectively unreasonable and undertaken with willfulness and reckless indifference to the rights of Mr. Abbe.

6.6    The right to be free of excessive force by sate actors was well known to Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala and was clearly established at the time of these acts and events. Qualified immunity defenses are not available to the officers here.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021

58

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

6.7     As a proximate result of Defendants Sgt. Alie's, Ofc. Suarez's, and Ofc. Abdala's violation of the Plaintiff's constitutional rights, Mr. Abbe suffered and will continue to suffer damages in the amount to be proven at trial.

6.8     The conduct of Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala also subjects them to punitive damages in an amount to be proven at trial.

### VII.   THIRD CAUSE OF ACTION
### MONELL CLAIM - RATIFICATION
### (42 U.S.C. § 1983 *et seq.*)
### (CITY OF VANCOUVER)

7.1     Plaintiff hereby restates and incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

7.2     Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala acted under color of state law.

7.3     The actions of Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala, deprived Mr. Abbe of his particular rights under the laws of the United States, and the United States Constitution.

7.4     VPD Chief James McElvain acted under color of state law.

7.5     VPD Chief James McElvain had final policymaking authority from defendant City of Vancouver for Vancouver Police Department concerning the acts of Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021

59

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

1    7.6    VPD Chief James McElvain was aware of the fact that Defendants Sgt.

2    Alie, Ofc. Suarez, and Ofc. Abdala used excessive force and killed Mr. Abbe.

3    7.7    VPD Chief James McElvain ratified Defendants Sgt. Alie's, Ofc.

4    Suarez's, and Ofc. Abdala's acts, that is, Chief McElvain knew of and specifically

5    made a deliberate choice to approve Sgt. Alie's, Ofc. Suarez's, and Ofc. Abdala's

6    acts and the basis for them.

7    7.8    As a result of Chief McElvain's ratification, the City of Vancouver has

8    violated Mr. Abbe's constitutional rights causing Plaintiff to suffer damages that

9    will be made more certain at trial.

10    7.9    The conduct of Defendant City of Vancouver above also subjects the

11    City of Vancouver to punitive damages in an amount to be proven at trial.

## VIII. FOURTH CAUSE OF ACTION
### MONELL CLAIM – POLICY OR PRACTICE
### (42 U.S.C. § 1983 *et seq.*)
### (CITY OF VANCOUVER)

16    8.1    Plaintiff hereby restates and incorporates by reference all paragraphs of

17    this Complaint as if fully set forth herein.

18    8.2    Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala acted under color

19    of state law.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790                                    60
Tuesday, October 26, 2021

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

8.3     The actions of Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala, deprived Mr. Abbe of his particular rights under the laws of the United States, and the United States Constitution.

8.4     Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala acted pursuant to an expressly adopted official policy or a widespread or longstanding practice or custom of the defendant City of Vancouver.

8.5     The defendant City of Vancouver's official policy or widespread or longstanding practice or custom caused the deprivation of the plaintiff's rights by the Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala; that is, the City of Vancouver's official policy or widespread or longstanding practice or custom is so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury.

8.6     As a result, the City of Vancouver has violated Mr. Abbe's constitutional rights causing Plaintiff to suffer damages that will be made more certain at trial.

8.7     The conduct of Defendant City of Vancouver above also subjects the City of Vancouver to punitive damages in an amount to be proven at trial.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021

61

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

## IX.   <u>FIFTH CAUSE OF ACTION</u>
## NEGLIGENCE
### (State Law)
### (ALIE) (SUAREZ) (ABDALA) (CITY)

9.1     Plaintiff hereby restates and incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

9.2     On the date that Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala shot and killed Mr. Abbe, they were acting as agents of the City of Vancouver, within the scope of their employment with the City of Vancouver.

9.3     The City of Vancouver and its agents, Defendant officers, owe a duty of care to persons with whom they interact in a police operation involving the likely use of deadly force, to take reasonable care so not to cause foreseeable harm in the course of such law enforcement interactions.

9.4     Defendant officers have a duty of reasonable care to refrain from inflicting unnecessary harm on others under general notions of negligence under the common law.

9.5     The City of Vancouver and Defendants Sgt. Alie's, Ofc. Suarez's, and Ofc. Abdala owed such a duty to Mr. Abbe, and Defendants Sgt. Alie Ofc. Suarez, and Ofc. Abdala breached that duty when they unreasonably and unnecessarily shot at, and killed, Mr. Abbe.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021

62

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

9.6    Defendants' breach of duty proximately caused Mr. Abbe's severe injury and death, as described above.

9.7    City of Vancouver is responsible for the acts of its agent and employees, Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala, and is therefore also liable.

9.8    The City of Vancouver, and Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala are liable to the Estate of William Abbe for the negligent actions which proximately caused Mr. Abbe injury and death.

9.9    As a result of the acts of the Defendants, Mr. Abbe has suffered injury to body and mind, significant pain, emotional distress, humiliation, disfigurement, and disability, and death, and the Estate of William Abbe is entitled under RCW 4.20.046 and RCW 4.20.060 to compensation in an amount to be proven at trial for his economic losses and non-economic losses under RCW 4.56.250, and statutory attorney fees and costs, and such other relief as is deemed appropriate by the court.

## X.    SIXTH CAUSE OF ACTION
### ASSAULT AND BATTERY
### (State Law)
### (ALIE) (SUAREZ) (ABDALA) (CITY)

10.1    Plaintiff hereby restates and incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021

63

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

10.2   The acts of Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala were made with intent to cause harmful or offensive contact or an apprehension by Mr. Abbe of such contact.

10.3   City of Vancouver is responsible for the acts of its agent and employees, Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala, and is therefore also liable.

10.4   As a result of the acts of the Defendants, Mr. Abbe has suffered injury to body and mind, significant pain, emotional distress, humiliation, disfigurement, and disability, and death, and the Estate of William Abbe is entitled under RCW 4.20.046 and RCW 4.20.060 to compensation in an amount to be proven at trial for his economic losses and non-economic losses under RCW 4.56.250, and statutory attorney fees and costs, and such other relief as is deemed appropriate by the court.

## XI.   SEVENTH CAUSE OF ACTION
### WRONGFUL DEATH
### (State Law RCW 4.20.010-.020)
### (ALIE) (SUAREZ) (ABDALA) (CITY)

11.1   Plaintiff hereby restates and incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

11.2   In the manner more fully described above, Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala intentionally and unjustifiably caused the death of Mr. Abbe (as alleged by counts above).

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021

64

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

11.3    As a result, the Estate of William Abbe is entitled to recover damages in the amount to be proven at trial under RCW 4.20.010-.020 for the benefit of the children of Mr. Abbe.

## XII.    INDEMNIFICATION

12.1    Plaintiff hereby restates and incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

12.2    In committing the acts alleged in the preceding paragraphs, Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala acted at all relevant times within the scope of their employment for City of Vancouver.

12.3    As a result, pursuant to State Law, the City of Vancouver must indemnify the Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala for any judgment against them.

## XIII.    RESPONDEAT SUPERIOR

13.1    Plaintiff hereby restates and incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

13.2    In committing the acts alleged in the preceding paragraphs, Defendants Sgt. Alie, Ofc. Suarez, and Ofc. Abdala acted at all relevant times within the scope of their employment for City of Vancouver.

13.3    Defendant City of Vancouver, as principal, is liable for all torts, including state law torts, committed by its agents.  City of Vancouver, as principal,

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021

65

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

1    should also be liable for the constitutional violations committed by its officers to

2    the extent that, by law and City ordinance, City of Vancouver is wholly responsible

3    for providing the defense of individual Defendant Officers and for indemnifying

4    them against any judgment or verdict that may result.

## XIV.  DAMAGES AND PRAYER FOR RELIEF

6        14.1   For the reasons stated above, Plaintiff Mr. Abbe prays for the following

7    relief:

8        14.2   For judgment against each of the Defendants, jointly and severally, for

9    monetary special damages in an amount to be determined at trial;

10       14.3   For judgment against each of the Defendants, jointly and severally, for

11   damages in the form of economic losses, non-economic loss, personal injuries,

12   emotional distress, embarrassment, loss of reputation, loss of enjoyment of life and

13   humiliation, in an amount presently unknown and to be made more certain at the

14   time of trial, as well as incurring attorney fees and other losses;

15       14.4   For judgment against each of the Defendants, jointly and severally, for

16   general compensatory damages in an amount to be determined at trial;

17       14.5   For judgment for punitive damages against each of the Defendants,

18   jointly and severally, in an amount to be determined at trial;

19       14.6   For attorney fees and costs authorized by statute, including reasonable

20   attorneys fees pursuant to 42 U.S.C. §1988 and RCW 4.84.010;

COMPLAINT AND DEMAND
NO.  3:21-cv-5790                              66
Tuesday, October 26, 2021

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

ANGUS LEE
LAW FIRM, PLLC

14.7   WHEREFORE, Mr. Abbe prays for damages as previously mentioned, together with other equitable relief, costs of this action and reasonable attorneys' fees, prejudgment interest on any lost wages or liquidated sums, punitive damages and any other relief as this Court deems equitable and just.

## XV.   **JURY DEMAND**

15.1   Mr. Abbe is entitled to and hereby demands trial by a jury.

DATED Tuesday, October 26, 2021.

ANGUS LEE LAW FIRM, PLLC

*S// D. Angus Lee*
D. Angus Lee, WSBA# 36473
Attorneys for William Abbe
Angus Lee Law Firm, PLLC
9105A NE HWY 99 Suite 200
Vancouver, WA 98665
Phone: 360.635.6464 Fax: 888.509.8268
E-mail: Angus@AngusLeeLaw.com

COMPLAINT AND DEMAND
NO.  3:21-cv-5790
Tuesday, October 26, 2021

67

9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268